**Mrs. Sarah M. MOORE, Plaintiff-Appellant,**

v.

**WINFIELD CITY BOARD OF EDUCATION, et al., Defendants-Appellees.**

**No. 71-1690.**

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1971.

R. Clifford Fulford, Max Pope, Birmingham, Ala., for plaintiff-appellant.

Arthur Fite, Jr., Hamilton, Ala., Lange, Simpson, Robinson & Somerville, Lawrence B. Clark, C. John Holditch, Birmingham, Ala., for defendants-appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Mrs. Moore, a nontenured teacher (librarian) formerly employed by the Winfield City Board of Education, filed this action under 42 U.S.C. §§ 1983 and 1988 against the Board alleging that defendant's refusal to renew her employment contract at the end of the school term 1968–1969 was motivated by her exercise of First Amendment rights in expressing her views and in taking an active role in urging the City Council to name a particular person to fill a vacancy on the School Board. She alleged in her complaint that the day following the appointment by the City Council of the new School Board member she was called to the office of Superintendent Weeks and told by him that it was the unanimous decision of the School Board to discontinue her employment at the end of that school term. At the trial an additional issue was urged, i. e., that her termination was motivated as the result of a speech she made as President of the Winfield Classroom Teachers Association (CTA), in which she protested the manner in which teachers allegedly were pressured into becoming members of the National Education Association (NEA). This last issue has emerged as the principal issue relied on by appellant in her appeal.

After a lengthy trial the District Court found that neither her stand on NEA membership nor her activity in connection with the appointment of the Board member by the City Council "played any part, directly or remotely, in the Board's determination not to continue her services"; that it was clear that "no member of the Board was aware of such activities at the time it reached its decision"; and that her termination was brought about by an accumulation of incidents showing that plaintiff was disloyal, uncooperative and a constant irritant in the School Board organization.

The issue before us is whether the Trial Court's conclusion that plaintiff was terminated for good cause and not in reprisal for the exercise of a constitutionally protected right is clearly erroneous. Although the evidence is in dispute it abounds with testimony pertaining to numerous acts on the part of appellant which fully justify the District Court's decision. We, therefore, affirm.

The speech upon which appellant heavily relies was delivered by her at the annual CTA dinner meeting on November 19, 1968. There was great dissatisfaction by faculty members in regard to appellant's remarks on that occasion, particularly those remarks pertaining to the lack of professional qualifications of faculty members in contrast to her own professional qualities. Several

of the teachers complained to Principal Brasher about her disparagement of co-workers, teachers, and the administration. It is obvious that Mrs. Moore's comments went far beyond a protest of alleged pressure by the Board to encourage NEA membership. Although Principal Brasher remarked to Superintendent Weeks the following day that plaintiff should be paid off immediately, the Board did not vote to terminate her until March of the following year. Weeks testified that he discussed with the Board his problems concerning plaintiff as far back as 1966 and at various times thereafter. He also testified that plaintiff's failure to join NEA played no part in his recommendation to terminate her, that although he considered the CTA speech, appellant would have been terminated even if she had not delivered it. Members of the Board testified that plaintiff's membership in NEA not only was never discussed but that they were unaware of her nonmembership at the time they voted to terminate her. They were also unaware of any activity on her part to support the appointment of an individual to the School Board. There was ample evidence to support the Court's conclusion that plaintiff's termination was not motivated by her constitutionally protected right of freedom of expression.

The evidence that plaintiff was discharged for good cause is equally convincing. There is evidence that Mrs. Moore arbitrarily refused faculty members the use of audio-visual equipment in her custody, despite the Superintendent's insistence that she make it available to all teachers; that she circulated false and malicious rumors, such as remarking to three schoolteachers that Superintendent Weeks had stolen or taken $700 in school funds, and that his former secretary was being fully compensated while on maternity leave; that one school-teacher resigned because she had been falsely told by Mrs. Moore that Superintendent Weeks had made plans to replace her; that she belittled fellow teachers in the presence of students, and was guilty of numerous acts of insubordination. Appellant either denied or attempted to explain away this adverse testimony, but the Trial Court resolved the credibility choice against her.

■■ Appellant contends that if the CTA speech played any part in her dismissal she is entitled to reinstatement. We do not agree. The constitutionally protected right of a public schoolteacher to criticize the school administration and to comment on matters of public concern is a limited right, a right which must be balanced against the need for orderly school administration. Pickering v. Board of Ed. of Tp. H. S. Dist. 205, Ill., 391 U.S. 563, 569, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968). Whether the activities of the school employee are protected under the First Amendment depends upon a weighing of the asserted interests. Pred v. Board of Public Instruction of Dade County, Fla., 5 Cir., 1969, 415 F.2d 851, 857; Fluker v. Alabama State Board of Education, 5 Cir., 1971, 441 F.2d 201, 207. Thus the contention by appellant that the First Amendment mandates her reinstatement if the CTA speech in any degree influenced the Board to terminate her is an incorrect statement of the applicable law.

■ Because of the overwhelming evidence showing that appellant's conduct over the years created serious disciplinary problems and discord among her fellow workers which disrupted the orderly and efficient administration of the school, we are unable and unwilling to say that the District Court was clearly erroneous in finding good cause for appellant's dismissal. Rule 52(a), Fed.R. Civ.P.

Affirmed.